J-S60006-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellant | |
| v. | |
| SHANNON MARIE FRANK, | |
| Appellee | No. 1716 WDA 2016 |

Appeal from the Order October 7, 2016
In the Court of Common Pleas of Cambria County
Criminal Division at No(s): CP-11-CR-0001171-2015

BEFORE: OLSON, J., DUBOW, J., and STEVENS, P.J.E.*

MEMORANDUM BY OLSON, J.:                    **FILED OCTOBER 13, 2017**

The Commonwealth of Pennsylvania appeals from the October 7, 2016 order granting Appellee Shannon Marie Frank's suppression motion. We affirm.

The factual background and procedural history of this case are as follows. On February 1, 2015, Appellee struck the center barrier on State Route 22. Soon thereafter, a member of the Pennsylvania State Police arrived. During the ensuing interaction, the trooper suspected that Appellee was driving under the influence of a controlled substance. Upon questioning, Appellee admitted to ingesting mood stabilizer and anti-anxiety medication. Appellee was transported to a local hospital and informed, by a reading of the DL-26 form, that, if she did not consent to a blood draw, she would face

* Retired Justice specially assigned to the Superior Court

increased criminal penalties. Appellee then agreed to the blood draw, which showed the presence of a controlled substance.

On August 28, 2015 the Commonwealth charged Appellee via criminal information with driving under the influence ("DUI")-controlled substance[1] and five summary offenses. On September 1, 2016, Appellee moved to suppress the blood draw evidence. She argued that the evidence was collected in violation of the Fourth Amendment of the United States Constitution.

Thereafter, the trial court held a suppression hearing which encompassed this case and six other cases which raised similar legal issues. Pursuant to the trial court's order, Appellee filed a post-suppression hearing brief. In that brief, Appellee, for the first time, argued that Article I, Section 8 of the Pennsylvania Constitution barred admission of the blood draw evidence. On October 7, 2016, the trial court granted the suppression motion. The Commonwealth filed this timely interlocutory appeal as of right.[2] *See* Pa.R.A.P. 311(d).

The Commonwealth presents three issues for our review:

_____

[1] 75 Pa.C.S.A. §§ 3802(d)(2).

[2] On November 8, 2016, the trial court ordered the Commonwealth to file a concise statement of errors complained of on appeal ("concise statement"). *See* Pa.R.A.P. 1925(b). On November 29, 2016, the Commonwealth filed its concise statement. On December 9, 2016, the trial court issued an order stating that its reasoning for granting Appellee's suppression motion was included in its October 7, 2016 opinion. All of the Commonwealth's issues were included in its concise statement.

1. Whether the [trial court] erred by ruling that the holdings of the Supreme Court of the United States in **Davis v. United States**, [564 U.S. 229 (2011)] and **Illinois v. Krull**, [480 U.S. 340 (1987)[3]] were inapplicable under Article [1,] Section 8 of the Pennsylvania Constitution when [Appellee] had only made a claim under the Fourth Amendment of the Federal Constitution and had implicitly waived all claims under Article [1,] Section 8[?]

2. Whether the [trial] court erred by suppressing evidence that was seized based upon the officer's good faith reliance on appellate precedent[?]

3. Whether [Appellee's] inculpatory statements regarding her drug use render any potential coercion inert as [Appellee] was ready and willing to admit to her drug use [?]

Commonwealth's Brief at 6.[4]

The Commonwealth's first two claims challenge the trial court's order suppressing the results of the blood draw. "Once a motion to suppress evidence has been filed, it is the Commonwealth's burden to prove, by a preponderance of the evidence, that the challenged evidence was not obtained in violation of the defendant's rights." **Commonwealth v. Evans**, 153 A.3d 323, 327 (Pa. Super. 2016) (citation omitted). Our standard of review in addressing a challenge to a trial court's order granting a suppression motion is whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct.

---

[3] Referred to as the **Davis/Krull** rule, the Supreme Court of the United States held that when the police conduct a search in objectively reasonable reliance upon binding appellate precedent or statutory authority which is later invalidated, the exclusionary rule does not apply. **Davis**, 564 U.S. at 249-250; **Krull**, 480 U.S. at 347.

[4] We have re-numbered the issues for ease of disposition.

*See Commonwealth v. Champney*, 161 A.3d 265, 271 (Pa. Super. 2017) (*en banc*) (citation omitted). "[O]ur scope of review is limited to the factual findings and legal conclusions of the [trial] court." *In re L.J.*, 79 A.3d 1073, 1080 (Pa. 2013) (citation omitted). "When the Commonwealth appeals from a suppression order, we . . . consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted." *Commonwealth v. Young*, 162 A.3d 524, 527 (Pa. Super. 2017) (citation omitted). "Where the [trial] court's factual findings are supported by the record, we are bound by these findings and may reverse only if the [trial] court's legal conclusions are erroneous." *Commonwealth v. Palmer*, 145 A.3d 170, 173 (Pa. Super. 2016) (citation omitted).

In order to understand the issues presented in this case, it is necessary to review the change in the law which prompted Appellee to file her suppression motion. When Appellee was arrested and gave consent to the blood draw, the warnings regarding increased criminal penalties for refusing a blood draw (included in form DL-26) were legally correct. While Appellee's case was pending, however, the Supreme Court of the United States decided *Birchfield v. North Dakota*, 136 S.Ct 2160 (2016). In *Birchfield*, the Supreme Court of the United States considered whether a blood draw was subject to one of the limited exceptions to the Fourth Amendment's warrant requirement.

"In **Birchfield**, the Supreme Court of the United States held that police can compel a driver to give a breath sample without a warrant; however, police cannot compel a driver to provide a blood sample without first obtaining a search warrant except in certain limited circumstances." **Commonwealth v. Giron**, 155 A.3d 635, 637 n.1 (Pa. Super. 2017) (citation omitted). Although **Birchfield**, **Evans**, and **Giron** were DUI-alcohol cases, their reasoning is equally applicable in DUI-controlled substance cases. **Commonwealth v. Ennels**, 2017 WL 2954227, *3–5 (Pa. Super. July 11, 2017). Therefore, in the wake of **Birchfield**, the DL-26 warnings read to Appellee were partially incorrect insofar as they advised Appellee that she faced additional charges and/or enhanced penalties if she refused the blood draw.

Notwithstanding the issuance of **Birchfield**, the Commonwealth maintains that the results of Appellee's blood test withstand suppression since the good-faith exception to the exclusionary rule applies in this case.[5] It is well-settled that a blood draw is a search under the Fourth Amendment

---

[5] The Commonwealth attempts to draw a distinction between the **Davis/Krull** rule and the good-faith exception to the exclusionary rule originally announced in **United States v. Leon**, 468 U.S. 897 (1984). The Supreme Court of the United States made clear in both **Davis** and **Krull** that it was merely applying the good-faith exception to the exclusionary rule and not announcing a new exception to the exclusionary rule. **See Davis**, 564 U.S. at 249 (this case "comes within the good-faith exception"); **Krull**, 480 U.S. at 346 (internal citation omitted) ("We granted certiorari to consider whether [the] good-faith exception to the Fourth Amendment exclusionary rule applies" in this case.). Thus, the **Davis/Krull** rule is just a specific example of the good-faith exception.

of the United States Constitution. *See Skinner v. Ry. Labor Execs.'* *Assn.*, 489 U.S. 602, 616–617 (1989); *Schmerber v. California*, 384 U.S. 757, 767–768 (1966). The fact that a blood draw is a search, however, does not end the inquiry. "As the text indicates and [the Supreme Court of the United States has] repeatedly affirmed, the ultimate touchstone of the Fourth Amendment is reasonableness." *Heien v. North Carolina*, 135 S.Ct. 530, 536 (2014) (internal quotation marks and citation omitted). For this reason, the Supreme Court of the United States has created a number of exceptions to the Fourth Amendment's warrant requirement. One such exception is if a defendant consents to a search. *See Illinois v. Rodriguez*, 497 U.S. 177, 183–186 (1990). Another such exception is a search conducted pursuant to exigent circumstances, *i.e.*, when police have insufficient time to seek a warrant because of an emergency. *See Michigan v. Tyler*, 436 U.S. 499, 509 (1978). In *Missouri v. McNeely*, 569 U.S. 141 (2013), the Supreme Court of the United States held that the exigent circumstances exception rarely applies in DUI cases. *See id.* at 149-156. Consent, on the other hand, is a factual issue.

"To effectuate the rights guaranteed under the Fourth Amendment, in the early part of the last century, the [Supreme Court of the United States] adopted the exclusionary rule, which bars the use of evidence obtained through an illegal search and seizure." *Commonwealth v. Arter*, 151 A.3d 149, 153 (Pa. 2016) (citation omitted). After approximately two decades of

strict adherence to the exclusionary rule, the Supreme Court of the United States adopted the good-faith exception to the exclusionary rule.

Under the good-faith exception, "when the police act with an objectively reasonable good-faith belief that their conduct is lawful, or when their conduct involves only simple, isolated negligence, the deterrence rationale loses much of its force, and exclusion [is not appropriate]." *Davis*, 564 U.S. at 238 (internal quotation marks and citations omitted). In *Davis*, the Court held that when a police officer conducts a search pursuant to binding appellate precedent, which is later overturned, the evidence seized as a result of that search is admissible under the good-faith exception. *Id.* at 239-241. In *Krull*, police conducted a warrantless administrative search pursuant to a state statute. Later, that statute was found to be unconstitutional. Nonetheless, the Supreme Court of the United States held that the good-faith exception to the exclusionary rule applied because the officer acted in an objectively reasonable manner in relying upon the subsequently invalidated statute. *Krull*, 480 U.S. at 349-351. Therefore, evidence that is collected pursuant to a state statute that has previously been upheld by an appellate court, but which is later declared unconstitutional, is generally admissible under the good-faith exception.

The good-faith exception distinguishes the Fourth Amendment of the United States Constitution from its Pennsylvania counterpart since "it is settled that under Article I, Section 8 of the Pennsylvania [C]onstitution, a

good[-]faith exception to the exclusionary rule does not exist." ***Commonwealth v. Frederick***, 124 A.3d 748, 756 (Pa. Super. 2015), *appeal denied*, 138 A.3d 2 (Pa. 2016) (citations omitted); ***Commonwealth v. Arnold***, 932 A.2d 143, 148 (Pa. Super. 2007) (citation omitted); ***Commonwealth v. Edmunds***, 586 A.2d 887, 888 (Pa. 1991). Although a concurring opinion authored by a member of this Court suggests that the good-faith exception may apply to exclusionary claims raised under Article I, Section 8 of the Pennsylvania Constitution in circumstances such as the ones present in this case, ***see Commonwealth v. Burgos***, 64 A.3d 641, 657 (Pa. Super. 2013) (Shogan, J., concurring), *appeal denied*, 77 A.3d 635 (Pa. 2013), the majority in ***Burgos*** explicitly rejected this statement and noted that "the good[-]faith exception does not exist [under] Pennsylvania [law]." ***Id.*** at 657 n.22 (citation omitted).

We have traced these distinctions between the Fourth Amendment of the United States Constitution and Article I, Section 8 because the precise legal authority Appellee cited in support of her motion has a significant impact upon the resolution of the instant appeal. The Commonwealth correctly notes that Appellee only moved to suppress the blood draw evidence under the Fourth Amendment of the United States Constitution. ***See*** Appellee's Suppression Motion, 9/1/16, at 3. Moreover, Appellee's counsel never mentioned the Pennsylvania Constitution at the suppression

hearing. We conclude, however, that Appellee preserved her state constitutional claim in her post-suppression hearing brief.

The Commonwealth cites *Commonwealth v. Freeman*, 128 A.3d 1231 (Pa. Super. 2015) in support of its argument that Appellee's post-suppression hearing brief was insufficient to preserve her Article I, Section 8 claim. *Freeman*, however, involved a case in which waiver occurred because the defendant failed to present the suppression issue to the trial court either before, during, or after the suppression hearing. *See id.* at 1242. For that reason, this Court never addressed whether raising a suppression issue in a post-suppression hearing brief was sufficient to preserve the issue. *See id.*

Although *Freeman* didn't address whether raising an issue in a post-suppression hearing brief preserved an issue, we find instructive this Court's recent decision in *Champney*. In *Champney*, this Court found that the defendant failed to preserve a suppression issue because he failed to raise it in his motion to suppress, at the suppression hearing, or in a post-suppression hearing brief. *See id.* at 285 n.25. This Court's statement that the defendant failed to include the issue in a post-suppression hearing brief indicates that it is possible to preserve the issue in a post-hearing submission.

The requirement that a defendant raise the grounds for suppression in his or her suppression motion ensures that the Commonwealth is put on

notice of what evidence it must produce at the suppression hearing in order to satisfy its burden of proving that the evidence was legally obtained. **Cf. Commonwealth v. McDonald**, 881 A.2d 858, 860-861 (Pa. Super. 2005) (internal quotation marks and citation omitted) ("[W]hen a motion to suppress is not specific in asserting the evidence believed to have been unlawfully obtained and/or the basis for the unlawfulness, the defendant cannot complain if the Commonwealth fails to address the legality of the evidence the defendant wishes to contest."). In this case, the Commonwealth extensively addressed the Article I, Section 8 issue in its brief filed prior to the suppression hearing. Commonwealth's Brief in Opposition, 9/15/16, at 5-10. It also addressed the Article I, Section 8 issue in its argument prior to the beginning of the suppression hearing. N.T., 9/15/16, at 5-12. The only additional evidence that the Commonwealth needed to offer because of Appellee's Article I, Section 8 claim was that of the trooper who testified at the suppression hearing. Finally, the Commonwealth did not object to Appellee raising her Article I, Section 8 claim before the trial court. Thus, the Commonwealth was not unfairly prejudiced by Appellee's delay in raising her Article I, Section 8 claim.

This case is similar to **Commonwealth v. Stoops**, 723 A.2d 184 (Pa. Super. 1998), *appeal denied*, 747 A.2d 368 (Pa. 1999). In **Stoops**, the Commonwealth argued, like it does in the case at bar, that the trial court improperly raised a suppression issue *sua sponte* because it was not

included in the defendant's suppression motion. This Court rejected that argument for two reasons. First, the necessary evidentiary record was developed at the suppression hearing. **See id.** at 188. Second, the defendant raised the issue in his post-suppression hearing brief and the Commonwealth did not object. **See id.** As noted above, in this case the necessary evidentiary record was developed at the suppression hearing and the Commonwealth did not object to Appellee raising her Article I, Section 8 claim in his post-suppression hearing brief. Accordingly, we conclude that Appellee properly raised and preserved her Article I, Section 8 claim.[6]

As we conclude that Appellee properly preserved her Article I, Section 8 claim, the trial court correctly found that the good-faith exception to the exclusionary rule does not exist under Article I, Section 8. **Frederick**, 124 A.3d at 756 (citations omitted). As such, the fact that police acted in good-faith reliance on appellate precedent was irrelevant when determining if the blood draw evidence was admissible at trial. Therefore, the Commonwealth is not entitled to relief on its first two issues.

In its third issue, the Commonwealth argues that Appellee's statement that she ingested mood stabilization and anti-anxiety medication prior to driving renders any coercion of the partially incorrect DL-26 warnings

---

[6] Since Appellee's inclusion of her state constitutional claim in a post-hearing submission allowed the trial court to consider the issue in light of the facts developed at the suppression hearing, we do not perceive Appellee's Article I, Section 8 claim as one that has been raised for the first time on appeal. **See** Pa.R.A.P. 302(a).

- 11 -

"inert." Commonwealth's Brief at 21. In other words, the Commonwealth argues that, notwithstanding the partially inaccurate DL-26 warnings, Appellee's consent was voluntary.

When a defendant is given partially inaccurate DL-26 warnings, the trial court must evaluate his or her "consent based on the totality of all the circumstances and given the partial inaccuracy of the officer's advisory." **Evans**, 153 A.3d at 331 (internal ellipses and alterations omitted), *quoting* **Birchfield**, 136 S.Ct. at 2186. Our Supreme Court has explained that:

> While there is no hard and fast list of factors evincing voluntariness, some considerations include: 1) the defendant's custodial status; 2) the use of duress or coercive tactics by law enforcement personnel; 3) the defendant's knowledge of h[er] right to refuse to consent; 4) the defendant's education and intelligence; 5) the defendant's belief that no incriminating evidence will be found; and 6) the extent and level of the defendant's cooperation with the law enforcement personnel.

**Commonwealth v. Gillespie**, 821 A.2d 1221, 1225 (Pa. 2003) (Eakin, J., opinion announcing the judgment of the court) (internal quotation marks omitted), *citing* **Commonwealth v. Cleckley**, 738 A.2d 427, 433 n.7 (Pa. 1999).

In this case, the trial court found that the first three factors weighed against a finding of consent. Appellee was in custody when she consented to the blood draw. The police used coercive tactics (albeit unknowingly) by reading her the partially inaccurate DL-26 warnings. Appellee was unaware of her knowledge of her right to refuse testing because of those partially inaccurate warnings. The trial court also found that Appellee cooperated

with the trooper during the encounter. Neither the Commonwealth nor Appellee challenge these factual findings.

Instead, the Commonwealth argues that the trial court's finding that there was no evidence that Appellee believed incriminating evidence would be found is unsupported by the record. Appellee, on the other hand, argues that the record supports the trial court's finding. After careful review of the certified record, we conclude that the trial court's factual finding is supported by the record.

The trooper testified that Appellee admitted that she took a mood stabilizer and an anti-anxiety medication. *See* N.T., 9/15/16, at 16. There was no evidence presented, however, that Appellee knew that having these substances in her system would be incriminating. As the trooper admitted at the suppression hearing, Appellee stated she had a prescription for these medications. *See id.* at 19. It was reasonable for the trial court to assume that Appellee was unaware of the fact that having these substances in her blood stream would be incriminating. As such, the trial court's factual finding is supported by the record.

The Commonwealth also argues that the trial court erred in weighing the relevant factors. We disagree. The trial court reasonably found that the coercive effect of being under custody and threatened with 72 hours imprisonment for refusing a blood draw outweighed the fact that Appellee

cooperated with the trooper. Accordingly, we affirm the order suppressing the blood draw evidence.

Order affirmed. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/13/2017