COMMONWEALTH of Pennsylvania, Appellant,

v.

Daniel Clyde STOOPS, Appellee.

Superior Court of Pennsylvania.

Argued Oct. 8, 1998.
Filed Dec. 10, 1998.
Reargument Denied Feb. 19, 1999.

Lisa Schlosser, Asst. Dist. Atty., Erie for the Com., appellant.

Paul J. Susko, Erie, for appellee.

Before EAKIN, SCHILLER, and OLSZEWSKI, JJ.

OLSZEWSKI, J.:

The Commonwealth appeals from an order suppressing breath test results by the Court of Common Pleas of Erie County. We affirm.

In the early morning hours of July 13, 1997, appellee was pulled over at a sobriety checkpoint. After failing several field sobriety tests, appellee was arrested and taken to the Kearsarge Fire Department to undergo testing of his blood alcohol content by breathalyzer. Officer Ott performed the breathalyzer testing. According to the breath test printout slips, the first test performed on appellee indicated that no "air blank" test[1] was performed and the breath test showed a blood alcohol content of 0.142 percent. The second test performed on appellee indicated that an "air blank" test was performed, showing 0.000 percent blood alcohol, and the breath test showed a blood alcohol content of 0.141 percent blood alcohol. Appellee filed a motion to suppress the breath test results. The Honorable Shad Connelly held a suppression hearing on February 5, 1998, and suppressed the breathalyzer results. This timely appeal followed. Appellant presents the following questions for our review:

> Whether Judge Connelly abused his discretion in refusing to allow the Commonwealth to offer relevant evidence, acknowledging that the Commonwealth bears the burden of persuasion, and then ruling that the Commonwealth failed to meet its burden, as well as raising issues sua sponte, which were waived by appellee.

1. Whether the Commonwealth failed to offer sufficient evidence of compliance with regulations?

2. Whether the Commonwealth failed to sufficiently demonstrate compliance with the "twenty minute rule?"

3. Whether Sgt. Ott's inability to explain why his certificate as a breath test operator classifying his qualification as

---

1. An air blank test is used to insure that there is no residual alcohol in the breathalyzer before conducting a breath test.

"Draeger 7410 Changeover" was dispositive of anything?

Appellant's brief at 3.

 Where the Commonwealth appeals the adverse decision of a suppression court, we must consider only the evidence of the defense witnesses and so much of the prosecution's evidence as remains uncontradicted. *Commonwealth v. Robinson*, 518 Pa. 156, 541 A.2d 1387 (Pa.1988). If "the evidence supports the factual findings, we are bound by such findings; a reviewing court may only reverse if the legal conclusions drawn therefrom are in error." *Commonwealth v. Fahy*, 512 Pa. 298, 516 A.2d 689, 694–695 (Pa.1986). Pursuant to Pa.R.Crim.P. 323(h),[2] at a suppression hearing "the Commonwealth carries the burden of production and persuasion to establish by a preponderance of the evidence that the evidence was properly obtained." *Commonwealth v. Culp*, 378 Pa.Super. 213, 548 A.2d 578, 581 (Pa.Super.1988). The admissibility of the results of chemical tests depends on strict compliance with the statutory requirements of 75 Pa.C.S.A. § 1547 and the regulations in 67 Pa.Code § 77.24. *Commonwealth v. Mabrey*, 406 Pa.Super. 437, 594 A.2d 700 (Pa.Super.1991). Section 1547 provides in part:

> (c) Test results admissible in evidence. — In any summary proceeding or criminal proceeding in which the defendant is charged with a violation of section 3731 ..., the amount of alcohol ... in the defendant's blood, as shown by chemical testing of the person's breath, blood or urine, which tests were conducted by qualified persons using approved equipment, shall be admissible in evidence.

75 Pa.C.S.A. § 1547(c). In accordance with this statute, the Department of Health and Transportation promulgated regulations for testing procedures, equipment, and training for chemical testing.

The particular regulation at issue in the Commonwealth's first question is section 77.24(b)(1), which provides: "(b) Procedures. Alcohol breath tests shall be conducted by a certified breath test operator ... The procedures for alcohol breath testing shall include, at a minimum: (1) Two consecutive actual breath tests, without a required waiting period between the two tests." 67 Pa.Code § 77.24(b)(1). Judge Connelly found that the Commonwealth did not meet its burden because it did "not put forth any evidence to adequately demonstrate its substantial compliance with the regulations." Trial court opinion, 3/9/98, at 10.

Upon reviewing the Commonwealth's brief, it is clear that it does not understand Judge Connelly's ruling on the breathalyzer testing results. The Commonwealth mistakenly argues that the suppression of the breath tests resulted from Judge Connelly finding that the "air blank" test performed in between the appellee's breath tests violated the regulation requiring two consecutive actual breath tests. In fact, Judge Connelly concluded that the alcohol breath test equipment used on appellee did not properly clear residual alcohol at the time the first breath test was administered because the first breath test printout slip stated "air blank" test not performed.[3] Thus, Judge Connelly held that two consecutive actual breath tests were not

---

**2.** Rule 323(h) provides that "[t]he Commonwealth shall have the burden of going forward with the evidence and of establishing that the challenged evidence was not obtained in violation of defendant's rights." Pa.R.Crim.P. 323(h).

**3.** The dissent does not agree that Judge Connelly's opinion "concludes that the machine did not properly clear residual alcohol" because the judge did not adopt the appellee's allegations, but merely stated what they were. Dissent, Eakin, J. In his opinion, Judge Connelly quoted the regulation at issue, section 77.24(b)(1), which requires "two consecutive actual breath tests." He next set forth appellee's contention that this regulation was not complied with because the printout from the first breath test showed that no air blank test was performed, thus the breathaly-

zer must not have cleared the residual alcohol in the machine because that is the result of an air blank test. Addressing appellee's contention and the Commonwealth's burden, Judge Connelly stated that

> [t]he *specific claims of the* defendant require that the Commonwealth provide more than mere reference to the calibration certificate, accuracy report of the [breathalyzer], and the Pennsylvania Bulletin ... As the Commonwealth has not put forth any evidence to adequately demonstrate its substantial compliance with the regulations, defendant is entitled to the suppression of the breath-test results.

Trial Court Opinion, 3/9/98, at 10 (emphasis added). It is clear that Judge Connelly's conclusion that the Commonwealth did not provide ade-

obtained because one breath test did not perform an "air blank" test and the other did.

Our research reveals no case law addressing whether two breath tests that produce printout slips that do not reflect the same pertinent information constitute "consecutive actual breath tests" under the regulations.[4] Obviously whether an "air blank" test was performed is important because it indicates if there is residual alcohol in the machine which would affect the breath test results. Here, we have one test printout showing an "air blank" test was not performed with the breath test and the other showing the "air blank" test was performed with the breath test. In order to comply with the statute and regulations, the Commonwealth must show that two consecutive *actual* breath tests were performed.

In *Commonwealth v. Schraf*, 135 Pa. Cmwlth. 246, 581 A.2d 249 (Pa.Cmwlth.1990),

the Pennsylvania Department of Transportation asserted that the word actual in its regulation requiring two consecutive actual breath tests "requires a test at which a valid reading is obtained." *Id.* 581 A.2d at 252. The Commonwealth Court accepted the Department of Transportation's interpretation of its own regulation. *Id.*

There were two consecutive tests taken of appellee's breath. In order for each test to be valid, the results of each should contain information pertinent to finding that the machine did not malfunction. Here, the result of each differed as to whether an "air blank" test was performed. This information can affect the results of the test. On cross-examination, Sergeant Ott testified that he had no idea why the test results differed. No other evidence was presented to explain this particular conflicting result in the printouts.[5]

---

quate evidence to demonstrate compliance with the regulation requiring two actual consecutive breath tests was based upon the issue presented by the appellee (i.e. no air blank test indicates no clearing of residual alcohol) and the lack of evidence from the Commonwealth with respect to that issue.

4. There are two Commonwealth Court cases that address printouts from breathalyzer machines: *Commonwealth v. Wixon*, 116 Pa.Cmwlth. 418, 541 A.2d 853 (Pa.Cmwlth.1988), and *Commonwealth v. Fellmeth*, 108 Pa.Cmwlth. 172, 528 A.2d 1090 (Pa.Cmwlth.1987). In *Wixon*, the Commonwealth Court addressed a situation where the breathalyzer did not print out the test result. The officer performing the test, however, saw the test result on the display of the breathalyzer. The court opined that "[a]n accurate machine printout is not necessary for the test to be successful. All that is necessary is that the visual reading of the result is accurate." *Wixon*, 541 A.2d at 854. The Commonwealth Court held that because the officer could testify to the accuracy of his visual reading of the display, the missing printout did not justify requesting Wixon to take a second breath test. Consequently, the Commonwealth Court concluded that Wixon's license should not have been suspended for refusal to take the second test.

In *Fellmeth, supra,* the officer conducted a sample test before conducting the breath test on Fellmeth. The printout from the sample test did not advance out of the machine. When the breath test was taken, the results were superimposed upon the sample reading printout. The Commonwealth Court held that the test was valid because the testing officer could read the result

on the superimposed printout and three officers testified that they saw the liquid crystal display of the test result on the breathalyzer. Therefore, the suspension of Fellmeth's license for refusal to take a second test was reversed because the first test he submitted to was valid.

The situation in the present case is different from those present in *Wixon* and *Fellmeth*. Initially, we note that *Wixon* and *Fellmeth* arose prior to the regulatory requirement for two consecutive actual breath tests. As a result, those cases did not address the issue of inconsistency between two breath test printouts. Sergeant Ott testified that he did not know why the printouts showed conflicting information. N.T., 2/5/98, at 61–62. Furthermore, Sergeant Ott did not testify as to visually reading the results from the display of the breathalyzer. For these reasons, we find *Wixon* and *Fellmeth* inapplicable to the printout issue in this case. Moreover, we are not bound by decisions from the Commonwealth Court.

5. The Commonwealth presented the calibration certificate of accuracy and the Pennsylvania Bulletin to prove that the machine used in this case did not malfunction. This evidence is not dispositive. The certificate only proves that "the device was properly tested and that during testing it had delivered an accurate reading ... [the] certificates d[o] not provide presumptive evidence to the jury on the accuracy of [breath] test results in question but rather [are] presumptive evidence only of the accuracy of the testing equipment." *Commonwealth v. Sloan*, 414 Pa.Super. 400, 607 A.2d 285, 293–94 (Pa.Super.1992). The Pennsylvania Bulletin only proves that the equipment is approved by the Department of Transportation. *Commonwealth v. Culp*, 378 Pa.Super. 213, 548 A.2d 578 (Pa.Super.1988).

In its brief, the Commonwealth asserts that Judge Connelly refused to allow it to present ·relevant evidence regarding the machine. The proffer of evidence, however, was to explain why "Dry Gas Accuracy Test" printed on the slips and why an "air blank" test was performed in between each breath test. Appellant's brief at 11. A separate issue discussed during the suppression hearing was that the printout slips printed "Dry Gas Accuracy Test" when Sergeant Ott conducted the accuracy testing before and after administering the breath tests. This is significant because Pennsylvania does not allow dry gas testing of breathalyzers, but rather only allows aqueous solution testing for accuracy.[6] Further, Sergeant Ott testified that he did indeed use an aqueous solution to test the machine and that the printout stating that dry gas was used to test the accuracy was a glitch of the machine based on the manufacturer programming the machines to print that message because dry gas is what most states use to test for accuracy. N.T., 2/5/98, at 83, 89. Judge Connelly did not base his decision to suppress the test results on this inconsistency or the fact that an "air blank" test was performed in between the two breath tests. Therefore, the testimony offered was not relevant to proving whether the machine malfunctioned while taking the breath tests. We find that the Commonwealth has not presented sufficient evidence to prove that it obtained two valid breath tests in compliance with the regulations.

Appellant next contends that the issue of whether it complied with the "twenty-minute rule"[7] was waived by appellee and improperly raised sua sponte by the trial court. Rule 323 of the Pennsylvania Rules of Criminal Procedure provides that a motion to suppress "shall state specifically and with particularity the evidence sought to be suppressed, the grounds for suppression, and the facts and events in support thereof." Pa.R.Crim.P. 323(d). In addition, if an issue is not raised in a motion to suppress it is waived. Pa.R.Crim.P. 323(b); *See e.g., Commonwealth v. Williams*, 547 Pa. 577, 692 A.2d 1031 (Pa.1997). In this case, appellee filed pre-trial discovery requests with the Commonwealth on November 10, 1997. Appellee's motion to suppress was filed on November 26, 1997. At that time, the Commonwealth had not yet answered the discovery requests. Therefore, in his motion, "[d]efendant reserve[d] the right to file additional pre-trial motions and reasons pending the receipt of discovery material." Appellee's motion to suppress, 11/26/97, ¶ 18. The Commonwealth did not supply a discovery response until February 3, 1998, two days before the suppression hearing. At the hearing, appellee specifically raised and developed the issue of the twenty-minute rule during his cross-examination of Sergeant Ott. N.T., 2/5/98, at 68–71. The Commonwealth did not object to this line of questioning. Furthermore, appellee referenced this issue in his brief in support of motion to suppress filed after the suppression hearing, wherein he stated that "[d]efendant's breath test results should be suppressed for the reasons stated above [ie. the malfunctioning], as well as the other violations of the Regulations cited during the suppression hearing." R. at 12a. Based upon the record, we find that appellee did not waive the issue of the twenty-minute rule.

We also reject the Commonwealth's argument that the trial court erred by giving a supplemental reason for suppressing the breath tests. Appellee developed testimony on this issue during cross-examination of Sergeant Ott without objection from the Commonwealth. Clearly, police compliance with the regulations was at issue in this case.

---

**6.** 67 Pa.Code § 77.22(b)(2).

**7.** The twenty-minute rule provides that:
The person to be tested with breath test equipment shall be kept under observation by a police officer or certified breath test operator for at least 20 consecutive minutes immediately prior to administration of the first alcohol breath test given to the person, during which time the person may not have ingested alcoholic beverages or other fluids, regurgitated, vomited, eaten or smoked. Custody of the person may be transferred to another officer or certified breath test operator during the 20 consecutive minutes or longer period as long as the person to be tested is under observation for at least 20 consecutive minutes prior to initial administration of the alcohol breath test.
67 Pa.Code § 77.24(a).

Judge Connelly found the testimony developed by appellee with respect to the twenty-minute rule also warranted suppression of the breath test results. Officer Canfield testified that he stopped appellee at 1:20 a.m. The printouts from the breathalyzer reveal that the first breath test was taken at 1:37 a.m. The only explanation offered by the Commonwealth for the seventeen-minute lapse in time, rather than twenty minutes, was that the officer's watch or the time set on the breathalyzer may not have been accurate. We agree with Judge Connelly that the Commonwealth failed to overcome its burden of proving strict compliance with the regulations.

We reject the Commonwealth's final contention that it should have been allowed to present testimony explaining why Sergeant Ott's breath test operator certificate classified his qualification as Draeger 7410 Changeover.[8] The regulations provide that breath test operators are "issued certificates ... [which] qualif[y them] to operate only ... [the] equipment on which they actually received instruction." 67 Pa.Code § 77.23(c)(1). In a footnote, the trial court merely noted that "Sgt. Ott was not able to offer an explanation regarding the reference to the Draeger 7410–Changeover on his certificate, and such casts further doubt as to the Commonwealth having met its burden of proof as to compliance with the regulations." Trial court opinion, 3/9/98, at 11 n.7. In its brief the Commonwealth argues that Lieutenant Dombrowski could have explained why Sergeant Ott's certificate listed the machine as a changeover, but the court precluded this testimony. We find this argument without merit because the trial court did not prevent the Commonwealth from presenting evidence to explain the certificate by virtue of the fact that the Commonwealth never offered such testimony at the hearing. In addition, the discrepancy in Sergeant Ott's certificate was not relied upon by the trial court to suppress the breath tests.

For the foregoing reasons, we conclude that the trial court correctly suppressed the breath test results because the evidence supports its factual findings and its legal conclusions drawn therefrom.

Order affirmed.

Dissenting Opinion by EAKIN, J.

EAKIN, J., dissenting:

I cannot find the record of the officer's compliance with the regulations inadequate. Accordingly, I must dissent.

I cannot agree Judge Connelly concludes the machine did not properly clear residual alcohol; while the majority so finds, I cannot locate this in the record. His opinion states this is *appellee's allegation*, but nowhere does the judge adopt that allegation – in the end, he says only "the Commonwealth has not put forth any evidence to adequately demonstrate its substantial compliance with the regulations."

While the evidence is muddled in its presentation, much of the specific testimony coming during cross-examination, the evidence of compliance is nevertheless there. On the air blank matter, the record shows:

1:22 accuracy test complete (N.T. 58,80)
1:23 air blank test (N.T. 59–60,80)
1:37 first "real" test (N.T. 61,80)
1:39 air blank test (N.T. 63,80)
1:41 second "real" test (N.T. 63,80)
1:43 accuracy test (N.T. 64,80)

To say the Commonwealth "did not put forth any evidence" on this point is not consistent with this record, which contains everything required. There was an opening accuracy test, two "real" tests, each preceded by an air blank test, and a closing accuracy test. What is lacking, I cannot say.

The only significant confusion came from the printouts, and if there were discrepancies to be explained, the court should have permitted that explanation from Lt. Dombrowski. He was present in the courtroom, ready to explain the idiosyncratic printouts of this machine; the proffer of his testimony appears sufficient. Where the suppression court concludes the Commonwealth failed to

---

8. The machine used to test appellee was a Draeger 7410 Model. The issue raised at the suppression hearing was why Sergeant Ott's certificate stated Draeger 7410–Changeover, rather than Draeger 7410 model.

present evidence of compliance, and the court declines to allow that very evidence, the decision is flawed.

On the "20 minute" question, the defense raised the issue sufficiently to have it considered, but the defense also pointed out the impossibility of such a violation with its own question: "Can you tell the court how you were giving breath tests to Mr. Swope at 1:22 and 1:23 in the morning when he was still down at the scene taking field sobriety tests?" (N.T. 69). The answer is obviously that he was not taking sobriety tests then. We know the sobriety tests were over well before then, proving a divergence between the watch on one officer's wrist and the internal clock in the machine.

The *actual* time of any of this is irrelevant – we are concerned about the length of time *between* the stop and the first "real" test. We know there were 15 minutes between the first accuracy test and that "real" test, as these times come from the same source, the machine itself. We also know there was about a minute between the first contact with Mr. Swope and the field sobriety test (N.T. 28), that he was at the staging area another five to ten minutes (N.T. 33), and that it took another "minute or two" to reach the location of the machine (N.T. 34). Judge Connelly did not find any of these times incredible – he focused on an estimate of first contact and contrasted it with the eventual printout on the machine, which is illusory.

This uncontroverted evidence shows at least seven minutes and up to thirteen minutes expired between the stop and the first accuracy test. If the accuracy test was complete the instant Mr. Swope came in the door of the fire station, the record shows at least 22 minutes of observation, not 15. The watch of the first officer and the internal clock of the machine simply weren't synchronized; as counsel's own question shows, the contrary is impossible.

As I find sufficient evidence of regulatory compliance, I would reverse the learned suppression court and allow this valid test to be admitted.