J-S47016-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CLAUDEL ALBERT ARCHER | : | |
| | : | |
| Appellant | : | No. 1190 EDA 2024 |

Appeal from the Judgment of Sentence Entered March 22, 2024
In the Court of Common Pleas of Chester County Criminal Division at
No(s):  CP-15-CR-0000827-2023

BEFORE:  KUNSELMAN, J., SULLIVAN, J., and BECK, J.

MEMORANDUM BY KUNSELMAN, J.:                    **FILED FEBRUARY 25, 2025**

Claudel Archer appeals from the judgment of sentence imposed after he was convicted of two counts of driving under the influence (DUI).  75 Pa.C.S. § 3802(d)(1)(i), (iii).  He challenges the denial of his motion to suppress evidence.  We affirm.

Archer was in a two-car crash on April 19, 2022.  Police responded and determined he was not at fault.  However, testing revealed that Archer's blood contained the active chemical in marijuana and its metabolites.  On August 27, 2022, police charged Archer with DUI and other offenses.  Archer waived the charges for court.

On May 19, 2023, Archer filed a motion to suppress physical evidence and his statements.  In the motion, Archer claimed that police obtained his statements without providing him the warnings required under **Miranda v. Arizona**, 384 U.S. 436 (1966).  Furthermore, Archer claimed that the blood

draw was unconstitutional because, absent his statements, there was no reasonable suspicion or probable cause to believe he was under the influence of drugs or alcohol or could not operate a motor vehicle safely.

The suppression court heard Archer's motion on August 24, 2023. Prior to the testimony, Archer confirmed that he was also claiming there was no probable cause for his arrest. The Commonwealth presented the testimony of Trooper Adam McLaughlin. Archer examined Trooper McLaughlin and introduced a dashboard camera video into evidence. The court later described its factual findings in its opinion on appeal:

> On the morning of April 19, 2022, at approximately 7:20 a.m., Pennsylvania State Trooper Adam McLaughlin was dispatched to a two-car accident on the Lancaster Avenue exit ramp of Rt. 202 in East Whiteland Township, Chester County. The trooper's first contact with [Archer] was initiated while [Archer] was standing by the side of the road. The trooper noted [Archer] had bloodshot eyes and was limping badly. He urged [Archer] to get checked out by the EMT. During the accident investigation, the trooper also noted a strong odor of fresh marijuana emanating from [Archer's] car.
>
> The trooper's second contact with [Archer] took place while [Archer] was being treated in the ambulance and lasted two to three minutes. During this conversation, [Archer] admitted to driving his vehicle prior to the accident but stated he had no idea why the trooper noted the odor of marijuana in and around his car. He explained that his car was not driven while he was on vacation prior to that morning, when he returned from a trip to North Carolina. [Archer] gave evasive answers before admitting that he smoked marijuana while in North Carolina. The trooper requested clarification as to whether [Archer] had valid insurance. The documents that were initially presented were invalid. [Archer] insisted that he had valid insurance before he was transported to Paoli Hospital for treatment.

[Archer's] car required towing from the scene. Before the tow truck arrived, the trooper returned to [Archer's] car to look for valid insurance and registration and found what he suspected to be loose marijuana on the passenger seat. A pink tube containing suspected marijuana and a vape pen containing THC liquid were found in the center console. The trooper also found eight separate pieces of odor masking sprays and air fresheners. The trooper did not find proof of insurance.

Trooper McLaughlin continued his investigation at the hospital in order to ascertain if [Archer] had been driving under the influence of a controlled substance in light of the contraband found in [Archer's] car. The trooper at no time placed [Archer] in custody and did not give *Miranda* warnings. When questioned about the ownership of the items found in his vehicle, [Archer] admitted the items were his. [Archer] also admitted to smoking marijuana prior to going to bed at 2:00 a.m. that morning. The trooper explained that he was concerned [Archer] was exhibiting certain indicators of impairment. [Archer] consented to the blood draw and signed [a form indicating his consent to a search]. [Archer's] female companion signed as a witness. The entire conversation did not last more than five minutes.

Trial Court Opinion, 6/21/24, at 3–4 (record citations omitted).

The parties filed briefs, in which Archer added a claim that his consent to a blood draw was invalid. The suppression court denied Archer's motion to suppress. The case proceeded to a stipulated non-jury trial, where Archer was convicted of DUI. The court sentenced Archer to the mandatory term of 72 hours to 6 months of imprisonment. Archer timely appealed. Archer and the trial court complied with Pennsylvania Rule of Appellate Procedure 1925.

Archer presents four issues on appeal, which we have reordered for ease of disposition:

1. Whether the suppression court erred by holding the *Miranda* warnings did not apply to Archer's statements made to the State Trooper during questioning at the hospital, while Archer was undergoing medical care for his injuries?

- 3 -

2. Whether the suppression court erred in finding that "good cause" existed to request and draw Archer's blood in violation of 75 Pa.C.S. § 3802(g) requiring the blood draw to be done within two hours of the last operation of the motor vehicle?

3. Whether the suppression court erred in finding that Archer knowingly, intelligently, and voluntarily submitted to the blood draw?

4. Whether the suppression court erred by holding the Pennsylvania State Trooper possessed probable cause to arrest Archer for being sufficiently intoxicated that he could not operate a motor vehicle safely?

*See* Archer's Brief at 5.

When this Court reviews the denial of a motion to suppress evidence, we determine whether the record from the hearing supports the suppression court's findings of fact and whether the legal conclusions the court drew from those facts are correct. *Commonwealth v. Smith*, 164 A.3d 1255, 1257 (Pa. Super. 2017) (citation omitted). We review legal conclusions *de novo*. *Commonwealth v. Korn*, 139 A.3d 249, 253 (Pa. Super. 2016).

Archer first claims legal error in the suppression court's determination that at the hospital, Trooper McLaughlin was not required to provide *Miranda* warnings.[1] Archer argues that because Trooper McLaughlin came to the hospital uninvited to investigate a suspected DUI but did not warn him of his rights, the court should have suppressed his statements. In support, Archer cites two cases that he presented to the suppression court: *Commonwealth*

_____

[1] Archer also submits that *Miranda* warnings were required when Trooper McLaughlin questioned him earlier in the ambulance. However, Archer has framed his appellate issue only for the questioning later in the hospital.

- 4 -

*v. D'Nicuola*, 292 A.2d 333 (Pa. 1972), and *Commonwealth v. Harper*, 230 A.3d 1231 (Pa. Super. 2020).

Police must provide *Miranda* warnings before they "question an individual who has been taken into custody or has been deprived of his freedom in any significant way." *Commonwealth v. Yandamuri*, 159 A.3d 503, 519–20 (Pa. 2017). Significantly, these warnings "are required only where a suspect is both taken into custody and subjected to interrogation." *Id.* at 520. Courts examine the totality of the circumstances to determine whether an encounter is "custodial," meaning that the suspect "is physically denied his freedom of action in any significant way or is placed in a situation in which he reasonably believes that his freedom of action or movement is restricted by the interrogation." *Id.* (citations omitted).

Notably, a suspect may be "in custody" even if he is not taken to a police station or formally arrested, such as when police question him at a hospital. *Commonwealth v. Perry*, 710 A.2d 1183, 1186 (Pa. Super. 1998) (citing *Commonwealth v. Fisher*, 352 A.2d 26, 28 (Pa. 1976)). We consider whether a person's detention at a hospital was caused by his medical condition or by police action. *Commonwealth v. Fento*, 526 A.2d 784, 789 (Pa. Super. 1987). A long duration of a police encounter at a hospital weighs in favor of finding custody. *Compare Fisher*, 352 A.2d at 29 (holding 48 hours of police guard subjected a hospital patient to custody), *and D'Nicuola*, 292 A.2d at 336 (twenty to thirty minutes of interrogation, custody), *with Fento*, 526 A.2d at 789 (five minutes, no custody). The presence of hospital staff and

- 5 -

acquaintances of the suspect weighs against finding custody. ***Perry***, 710 A.2d at 1186. Finally, a suspect may reasonably believe that he cannot terminate an encounter with a police officer who issues a "directive—rather than a request—" to undergo a potentially incriminating test. ***Harper***, 230 A.3d at 1236, 1238.

Here, the facts established at the suppression hearing support the suppression court's finding that Trooper McLaughlin's interaction with Archer at the hospital was not custodial. Archer's presence at the hospital was the result of his own decision, albeit a decision made at Trooper McLaughlin's encouragement. The interaction was no more than five minutes long, and Archer was joined at the hospital by his female companion. Although Trooper McLaughlin acknowledged that he went to the hospital to investigate a suspected DUI, he sought Archer's consent to undergo a blood test. Given the totality of the circumstances, we agree with the suppression court that a reasonable person in Archer's situation would not feel that the police questioning restricted his freedom of action or movement. Because Archer was not in custody at the hospital, Trooper McLaughlin was not required to provide ***Miranda*** warnings. Archer's first issue fails.

Second, Archer faults the suppression court for allowing evidence of a blood draw conducted more than two hours after he was driving, in apparent violation of subsection 3802(g) of the Vehicle Code.

The Commonwealth responds that subsection 3802(g) does not apply to the DUI statute that Archer violated, namely subsection 3802(d)(1). We agree with the Commonwealth.

Archer was charged with one of the "*per se*" DUI offenses in Section 3802. These offenses require only proof of alcohol or controlled substances in an individual's blood with no separate proof of actual impairment. ***See generally Commonwealth v. Griffith***, 32 A.3d 1231, 1238 (Pa. 2011). The other *per se* offenses, at subsections (a)(2), (b), (c), (e), and (f)(1), generally prohibit driving with more than a specified limit of alcohol in an individual's blood "within two hours after the individual has driven." 75 Pa.C.S. § 3802(a)(2), (b), (c), (e), and (f)(1). If a blood draw occurs more than two hours after an individual has driven, the Commonwealth may still meet its burden if it proves the exception to the two-hour rule in subsection 3802(g). ***Commonwealth v. Starry***, 224 A.3d 312, 319 (Pa. 2020). That subsection provides:

> Notwithstanding the provisions of subsection (a), (b), (c), (e) or (f), where alcohol or controlled substance concentration in an individual's blood or breath is an element of the offense, evidence of such alcohol or controlled substance concentration more than two hours after the individual has driven . . . is sufficient to establish that element of the offense under the following circumstances:
>
> > (1) where the Commonwealth shows good cause explaining why the chemical test sample could not be obtained within two hours; and
> >
> > (2) where the Commonwealth establishes that the individual did not imbibe any alcohol or utilize a controlled substance

> between the time the individual was arrested and the time the sample was obtained.

75 Pa.C.S. § 3802(g).

Subsection (d)(1), by contrast, generally prohibits driving with "any amount" of a controlled substance or metabolite in one's blood but does not include a time limit. 75 Pa.C.S. § 3802(d)(1). Thus, the "two-hour rule does not apply to" a *per se* DUI of a controlled substance. ***Commonwealth v. Trahey***, 228 A.3d 520, 537 (Pa. 2020); ***see*** 75 Pa.C.S. § 3802(d)(1). Consequently, there is no need to establish that a blood test for controlled substances, conducted more than two hours after the defendant drove, complied with the requirements of subsection 3802(g). Subsection 3802(d)(1) does not impose "a time limit on testing for the presence of controlled substances after driving." ***Commonwealth v. Wilson***, 101 A.3d 1151, 1156 (Pa. Super. 2014). Archer's second issue fails.

Third, Archer claims that his consent to a blood draw was invalid because of defects in the document he signed. According to Archer, he signed a form designed for property searches, not the DL–26B form.

The Commonwealth claims that Archer waived this issue, which Archer did not raise until his brief to the suppression court after the hearing. On the merits, the Commonwealth argues that Archer's consent was valid.

Generally, a defendant must "specifically and with particularity" state "the grounds for suppression" in his suppression motion. Pa.R.Crim.P. 581(D). Raising the grounds for suppression before the suppression hearing puts the Commonwealth on notice of what is required to prove the evidence

was legally obtained.  ***Commonwealth v. Carper***, 172 A.3d 613, 619 (Pa. Super. 2017).  However, a defendant may raise a suppression issue in a post-hearing brief before the trial court if doing so does not unfairly prejudice the Commonwealth.  ***Id.*** at 620 (citing ***Commonwealth v. Stoops***, 723 A.2d 184 (Pa. Super. 1998)).  A suppression issue in a post-hearing brief does not unfairly prejudice the Commonwealth, and is preserved for review, if: (1) the Commonwealth addressed the issue at the hearing and (2) the Commonwealth does not object to the defendant raising the issue in the post-hearing brief. ***See id.*** at 619–20.

Here, Archer failed to preserve his consent issue by raising it for the first time in his brief after the suppression hearing.  The Commonwealth, which was not on notice of the issue, did not introduce evidence about what form Archer signed at the hospital.  ***See*** N.T., 8/24/23, at 13 ("He signed a waiver of the consent to search.  [The woman with him] signed it as a witness … ."). Nor did Archer question Trooper McLaughlin about what form he used.  ***See id.*** at 14–34.  Furthermore, the Commonwealth objected that Archer raising an issue in his post-hearing brief was "improper and untimely."  Response, 1/3/24, at 5.  Therefore, Archer waiting until after the suppression hearing to challenge to the validity of his consent unfairly prejudiced the Commonwealth. Archer's third issue is waived.

Fourth, Archer argues that Trooper McLaughlin lacked probable cause to arrest him for DUI, where there was no evidence that he could not drive

safely.[2]  Archer emphasizes that he was not at fault for the accident, committed no moving violations, and initially gave no signs that he had used marijuana.

As presented, this issue is moot.  "An issue before a court is moot if in ruling upon the issue the court cannot enter an order that has any legal force or effect." *Orfield v. Weindel*, 52 A.3d 275, 278 (Pa. Super. 2012) (citation omitted).

Here, Archer was initially charged with three counts of DUI of a controlled substance, among other offenses.  *See* 75 Pa.C.S. § 3802(d)(1)(i), (1)(iii), (2).  However, by the time of Archer's stipulated non-jury trial, the only crimes at issue were *per se* DUI offenses, which did not require proof that Archer could not drive safely.  *See Griffith*, 32 A.3d at 1238.  Even without probable cause for DUI under subsection 3802(d)(2), there **was** probable cause to support the *per se* offenses under subsection 3802(d)(1)(i) and (iii), the only crimes of which Archer was convicted.  Thus, if we determined that Trooper McLaughlin lacked probable cause to believe that Archer could not drive safely, it would not have any effect on Archer's convictions.  Therefore, Archer's fourth issue is moot.

Judgment of sentence affirmed.

Judge Beck joins; Judge Sullivan did not participate.

---

[2] Archer also submits there was no probable cause to conduct a blood draw. However, Archer has stated that his appellate issue is about probable cause to arrest him.

- 10 -

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: 2/25/2025