J-A25015-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DONOVAN FRANCIS RUTLEDGE | : | |
| | : | |
| Appellant | : | No. 159 EDA 2024 |

Appeal from the Judgment of Sentence Entered December 1, 2023
In the Court of Common Pleas of Chester County Criminal Division at
No(s): CP-15-CR-0001070-2023

BEFORE:   LAZARUS, P.J., BOWES, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY LAZARUS, P.J.:                **FILED JANUARY 9, 2026**

Donovan Francis Rutledge appeals from the judgment of sentence, entered in the Court of Common Pleas of Chester County, following his convictions of one count of driving under the influence (DUI)—general impairment,[1] DUI—high rate of alcohol,[2] and disregarding traffic lanes.[3] After review, we affirm.

On January 5, 2023, at 5:38 p.m., Police Officer Tyler O'Brien of the West Whiteland Township Police Department responded to the scene of a single vehicle accident in the area of Grove Road and Stewart Drive.  Upon

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 75 Pa.C.S.A. § 3802(a)(1).

[2] *Id.* at § 3802(b).

[3] *Id.* at § 3309(1).

arrival, Officer O'Brien, equipped with a body camera,[4] approached the vehicle and began speaking with Rutledge, who was the sole occupant of the vehicle. Officer O'Brien observed that Rutledge's eyes were bloodshot and glassy, his breath had an odor of alcohol, and his speech was slow, thick, and slurred.

Based upon Officer O'Brien's discussion with Rutledge and his observations, Officer O'Brien believed that Rutledge was traveling southbound on Grove Road when he lost control of his vehicle. As a result, Rutledge drove up the embankment on the right side of the road, drifted along the top of the embankment, and, ultimately, drove into the creek, where Officer O'Brien encountered Rutledge and the vehicle. Officer O'Brien did not observe any adverse road conditions. Relevant to Rutledge's claims, during this interaction, Officer O'Brien did not observe Rutledge eating, drinking, burping, vomiting, or regurgitating.

Ultimately, at 5:58 p.m., Officer O'Brien arrested Rutledge and placed him in the patrol car. Officer O'Brien's patrol car was equipped with a camera in the rear of his patrol vehicle. Again, Officer O'Brien did not observe Rutledge eating, drinking, burping, vomiting, or regurgitating during the time he was being transported to the police station.

At 6:10 p.m., Rutledge was placed on a bench in the police station for observation. Officer O'Brien knew that Pennsylvania law requires a 20-minute observation period prior to administering a breathalyzer test. At 6:28 p.m.

_____

[4] Officer O'Brien's body camera was admitted as Commonwealth Exhibit 3 at trial. *See* N.T. Non-Jury Trial, 9/20/23, at 28.

and 6:32 p.m., Officer O'Brien conducted two breathalyzer tests and the results were 0.128% and 0.129%.

As a result of the foregoing, Rutledge was charged with the above-mentioned offenses. On April 17, 2023, Rutledge filed an omnibus pre-trial motion in which he alleged, inter alia, that the breathalyzer tests must be suppressed because Officer O'Brien did not observe Rutledge for the 20-minute period prior to administering the breathalyzers.[5] *See* Omnibus Pre-Trial Motion, 4/17/23, at 2-3. On August 17, 2023, the trial court conducted a pre-trial hearing, at which it addressed Rutledge's claims. On August 22, 2023, the trial court denied Rutledge's omnibus pre-trial motion.

On September 20, 2023, the trial court conducted a non-jury trial, after which it convicted Rutledge of the above-mentioned offenses. The trial court deferred sentencing. On December 1, 2023, the trial court conducted a sentencing hearing and sentenced Rutledge to the mandatory minimum sentence of 30 days to 6 months' incarceration for his conviction of DUI—high rate of alcohol, and a $25.00 fine for disregarding traffic lanes. The trial court also merged Rutledge's conviction for DUI—general impairment with his conviction for DUI—high rate of alcohol.

On December 5, 2023, Rutledge filed a timely post-sentence motion challenging the sufficiency of the evidence, weight of the evidence, and the

_____

[5] Rutledge raised additional claims that he either abandoned at suppression or did not raise on appeal. *See* Trial Court Opinion, 4/18/24, at 6-7.

- 3 -

denial of his omnibus pre-trial motion. On December 11, 2023, the trial court denied Rutledge's post-sentence motion.

Rutledge filed a timely notice of appeal and a court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Rutledge now raises the following claims for our review:

> 1. Did the trial [court] err in not suppressing the .128 breath test since [] Rutledge . . . was not fully observed for the twenty minutes as required by 67 Pa. Code 77.24([a]) prior to the testing and did the trial [court] further err and abuse [its] discretion in not allowing the defense medical doctor expert to testify at the [s]uppression [h]earing as to the problems caused by the lack of proper twenty[-]minutes observation which would have corrupted the testing process?
>
> 2. Were the convictions for [DUI]—general impairment . . ., [DUI]—high rate[ of alcohol] . . ., and . . . [disregarding traffic lanes] not supported by sufficient evidence particularly since there was no proper twenty[-]minute observation before the breath tests were begin [*sic*] and the evidence did not demonstrate [Rutledge] had drank any alcohol?
>
> 3. Were the convictions for [DUI]—general impairment . . ., [DUI]—high rate[ of alcohol] . . ., and . . . [disregarding traffic lanes] against the weight of the evidence[,] particularly since there was no proper twenty[-]minute observation before the breath tests were begin [*sic*] and the evidence demonstrated [Rutledge] did not drink any alcohol and the verdicts should shock the conscience of the [c]ourt?

Brief for Appellant, at 8-9.

In his first issue, Rutledge raises two sub-issues, which we address separately. ***See id.*** at 51-61. In his first sub-issue, Rutledge argues that the Commonwealth failed to show, by a preponderance of the evidence, that he was observed for the required minimum of 20 minutes prior to his breath test.

*See id.* at 51-60. Rutledge asserts that observation did not begin until 6:10 p.m. and the breath test was administered at 6:28 p.m. in violation of subsection 77.24(a). *Id.* at 53-54. Rutledge acknowledges this Court's decision in *Commonwealth v. Barlow*, 776 A.2d 273 (Pa. Super. 2001), which held that observation does not require police to watch the suspect's mouth "100% of the time," but contends that, here, police did not engage in "direct observation" for the required 20 minutes. *See* Brief for Appellant, at 55-56. Rutledge posits that he was left alone in the police cruiser, after arriving at the police station, for one minute and that lapse in observation fails to satisfy *Barlow* and subsection 77.24(a). *See* Brief for Appellant, at 56-60.

Our standard of review in addressing a challenge to a denial of a suppression motion is well settled:

> [This Court] is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, [this Court] is bound by [those] findings and may reverse only if the court's legal conclusions are erroneous.

*Commonwealth v. Patrick Jones*, 121 A.3d 524, 526 (Pa. Super. 2015) (citation omitted). Moreover, "[i]t is within the suppression court's sole province as fact[-]finder to pass on the credibility of witnesses and the weight to be given their testimony." *Commonwealth v. Baker*, 946 A.2d 691, 693 (Pa. 2008) (citation omitted).

Generally, the admissibility of the results of chemical tests, including breath tests, depends upon strict compliance with the statutory requirements of 75 Pa.C.S.A. § 1547 and the regulations set forth in 67 Pa.Code § 77.24. *See Commonwealth v. Stoops*, 723 A.2d 184, 186 (Pa. Super. 1998). Section 1547, in part, states as follows:

> **(a) General rule.--**Any person who drives, operates[,] or is in actual physical control of the movement of a vehicle in this Commonwealth shall be deemed to have given consent to one or more chemical tests of breath or blood for the purpose of determining the alcoholic content of blood or the presence of a controlled substance if a police officer has reasonable grounds to believe the person to have been driving, operating[,] or in actual physical control of the movement of a vehicle in violation of section 1543(b)(1.1) . . ., 3802 . . . or 3808(a)(2)[.]
>
> * * *
>
> **(c) Test results admissible in evidence.--**In any . . . criminal proceeding in which the defendant is charged with a violation of section 3802 or any other violation of this title arising out of the same action, the amount of alcohol or controlled substance in the defendant's blood, as shown by chemical testing of the person's breath or blood, which tests were conducted by qualified persons using approved equipment, shall be admissible in evidence.
>
>> (1) Chemical tests of breath shall be performed on devices approved by the Department of Health using procedures prescribed jointly by regulations of the Departments of Health and Transportation. Devices shall have been calibrated and tested for accuracy within a period of time and in a manner specified by regulations of the Departments of Health and Transportation. For purposes of breath testing, a qualified person means a person who has fulfilled the training requirement in the use of the equipment in a training program approved by the Departments of Health and Transportation. A certificate or log showing that a device was calibrated and tested for accuracy and that the device was accurate shall be presumptive evidence of those

facts in every proceeding in which a violation of this title is charged.

75 Pa.C.S.A. §§ 1547(a), (c)(1).   The particular regulation at issue here states:

> (a) *Observation.*   The person to be tested with breath test equipment shall be kept under observation by a police officer or certified breath test operator for at least 20 consecutive minutes immediately prior to administration of the first alcohol breath test given to the person, during which time the person may not have ingested alcoholic beverages or other fluids, regurgitated, vomited, eaten[,] or smoked.   **Custody of the person may be transferred to another officer** or certified breath test operator **during the 20 consecutive minutes** or longer period **as long as the person to be tested is under observation for at least 20 consecutive minutes prior to initial administration of the alcohol breath test.**

67 Pa.Code § 77.24(a) (emphasis added).

This Court, in **Barlow**, interpreted subsection 77.24(a) and concluded that "observation" does not require "eyes on [defendant's] mouth 100% of the time[,]" **Barlow**, 776 A.2d at 275-76.   In that case, the defendant was isolated in the back of a patrol car for approximately 30 minutes with no access to food or drink while he was transported to the police station.   **See id.** at 275.   Additionally, the only officer in the vehicle was driving it and, thus, could not have been watching Barlow's mouth for the entire 30 minutes.   **See id.** Nevertheless, this Court concluded that subsection 77.24(a) did not require the officer to observe Barlow's mouth for the entire time and considered that Barlow did not have the ability to ingest any additional food or drink due to the circumstances of being isolated in the patrol car.   **See id.**   Further, this Court determined that the Commonwealth need only show **by a**

**preponderance of the evidence** that they had satisfied the observation requirement. **See id.**

Applying the foregoing case law to the instant facts, we agree with the trial court that the Commonwealth, by a preponderance of the evidence, satisfied the 20-minute observation requirement of subsection 77.24(a). **See** Order Denying Omnibus Pretrial Motion, 8/22/23, at n.1 (applying **Barlow** and concluding Officer O'Brien's observation of Rutledge during transportation in patrol vehicle, combined with observation of Rutledge in police station, satisfied 20-minute requirement). First, Officer O'Brien is a certified breath test operator and the Intoxilyzer 9000 that he used was properly calibrated and certified. **See** Commonwealth Exhibit 2 (Officer O'Brien's breath test operator certificate); Commonwealth Exhibit 7 (Intoxilyzer 9000 calibration certification); Commonwealth Exhibit 8 (Intoxliyer 9000 accuracy certification). Additionally, we observe that Rutledge's claim regarding the single minute he was left alone in the patrol vehicle is meritless. Importantly, Rutledge was still isolated in the patrol vehicle with no access to food or beverages and was observed by Officer Lemon[6] during this time. **See** N.T. Omnibus Pre-Trial Hearing, 8/17/23, at 12. Thus, there was no "break" in observation, as subsection 77.24(a) permits custody of a person to change between officers. **See** 67 Pa.Code § 77.24(a). In total, Rutledge was observed by police for 30 minutes prior to the administration of the first breath

_____

[6] Officer Lemon's first name does not appear in the certified record.

- 8 -

test and, consequently, the Commonwealth demonstrated by a preponderance of the evidence that it complied with subsection 77.24(a). Moreover, at the pre-trial hearing, Rutledge's counsel conceded that if the trial court applied **Barlow** his claim would fail. **See** N.T. Omnibus Pre-Trial Hearing, 8/17/23, at 11-12. Accordingly, the trial court did not err in denying Rutledge's motion to suppress.

In his second sub-issue, Rutledge asserts that the trial court erred in precluding his medical expert from testifying at the suppression hearing as to the importance of the 20-minute observation period. **See id.** at 60-61. We disagree.

First, we conclude that Rutledge has waived this claim for failure to adequately develop it in his appellate brief. Rutledge's argument amounts to one-and-one-half pages of argument with no citations to the record, case law, or anything supporting his claim. **See** Pa.R.A.P. 2119(a) (providing appellant's arguments shall include "such discussion and citation of authorities as are deemed pertinent"); **Commonwealth v. Johnson**, 985 A.2d 915, 924 (Pa. 2009) ("where an appellate brief fails to . . . develop the issue in any [] meaningful fashion capable of review, that claim is waived"); **Commonwealth v. Hardy**, 918 A.2d 766, 771 (Pa. Super. 2007) (explaining appellant must "present arguments that are sufficiently developed for our review. . . . This Court will not act as counsel and will not develop arguments on behalf of an appellant."). Accordingly, it is waived.

Even if Rutledge had not waived this claim, we would conclude that it has no merit. Having concluded that Rutledge was observed for at least 20 minutes prior to the administration of the breath tests, we similarly conclude that the trial court did not err in prohibiting the defense expert from testifying as to the importance of the 20-minute requirement. *See* Order Denying Omnibus Pretrial Motion, 8/22/23, at n.1 (concluding expert testimony regarding "importance" of observation was irrelevant for purposes of suppression). Notably, we observe that the Commonwealth's burden of proof for purposes of determining how long Rutledge had been observed is **preponderance of the evidence**. *See Barlow*. Thus, the significance of those 20 minutes is wholly irrelevant to whether the Commonwealth met that burden. Such expert testimony would be more appropriate to present at trial. Consequently, we conclude that the trial court did not err in denying Rutledge's motion to suppress.

In his second claim, Rutledge argues that the Commonwealth failed to present sufficient evidence to sustain his convictions of DUI—general impairment, DUI—high rate, and disregarding traffic lanes. *See* Brief for Appellant, at 62-77. Rutledge concedes that there was "no doubt" he was driving the vehicle at the time of his accident. *Id.* at 63-64. However, he contends that he was not under the influence of alcohol. *See id.* at 64. Rutledge asserts that he "did not drink anything other than swallow a sip of mouthwash" prior to leaving his home and operating the vehicle. *Id.* Rutledge posits that the mouthwash, combined with coughing prior to the

breath test, caused a false positive because his coughing caused more of the alcohol from the mouthwash to be detected by the breathalyzer. *See id.* at 64-65. Rutledge cites to his medical expert, Dr. Lawrence Guzzardi,[7] and Officer O'Brien, both of whom testified at trial that consuming mouthwash before driving could impact the results of a breathalyzer. *See id.* at 65. Rutledge then points to his own testimony, where he explained that: he was traveling to church and that "it would be highly unlikely one would be drinking" before going to church, his deafness in one ear impacted his speech pattern; he was cooperative with Officer O'Brien; and, his sister, Alesha Sinski, testified Rutledge had used mouthwash prior to leaving the house. *See id.* at 65-68. Finally, Rutledge argues that the Commonwealth failed to demonstrate that he had been observed for the subsection 77.24(a) requisite 20 minutes prior to the administration of the breath test and, thus, the Commonwealth failed to demonstrate sufficient evidence of impairment or high rate of alcohol. *See* 68-77. We disagree.

We adhere to the following standard of review:

[W]hether[,] viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not [re-]weigh the evidence and substitute our judgment for [that of] the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak

_____

[7] Doctor Guzzardi was accepted as an expert in toxicology. *See* N.T. Non-Jury Trial, 9/20/23, at 132.

and inconclusive that[,] as a matter of law[,] no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated[,] and all evidence actually received must be considered. Finally, the [trier] of fact[,] while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part[,] or none of the evidence.

*Commonwealth v. Smith*, 97 A.3d 782, 790 (Pa. Super. 2014) (citation omitted).

DUI—general impairment and DUI—high rate of alcohol are defined as follows:

**(a) General impairment.--**

(1) An individual may not drive, operate[,] or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating[,] or being in actual physical control of the movement of the vehicle.

* * *

**(b) High rate of alcohol.--**An individual may not drive, operate[,] or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the alcohol concentration in the individual's blood or breath is at least 0.10% but less than 0.16% within two hours after the individual has driven, operated[,] or been in actual physical control of the movement of the vehicle.

75 Pa.C.S.A. §§ 3802(a)(1), (b).

Disregarding traffic lanes requires "[a] vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from the

lane until the driver has first ascertained that the movement can be made with safety." 75 Pa.C.S.A. § 3309(1).

Instantly, Officer O'Brien was dispatched on January 5, 2023, at 5:38 p.m. for a single vehicle accident. *See* N.T. Non-Jury Trial, 9/20/23, at 26. Officer O'Brien arrived on scene at 5:42 p.m. whereupon he observed no puddles, ice, or any other obstructions on the roadway. *See id.* at 38. Officer O'Brien investigated the scene and determined that the vehicle had traveled up a steep embankment to the right side of the road, drifted to the top of the embankment, traveled on top of it through a large flower pot, and proceeded down the embankment back across the road and down the left side of the road before coming to a rest in the nearby ditch. *See id.* at 33-34; *see also* Commonwealth Exhibit C-4; Trial Court Opinion, 4/18/24, at 1-2 (summarizing Commonwealth's evidence). Additionally, Officer O'Brien spoke with Rutledge, who identified himself as the driver of the vehicle. *See* N.T. Non-Jury Trial, 9/20/23, at 31; *see also id.* at 104 (Rutledge testifying he operated vehicle and lost control on road). Officer O'Brien could smell alcohol emanating from Rutledge and noted that his eyes were glassy and bloodshot and his speech was slow, thick, and slurred. *See id.* Based upon these observations and his conversation with Rutledge, Officer O'Brien arrested him and, after the above-described observation period, administered two breath tests which revealed blood alcohol content (BAC) of 0.128% and 0.129% respectively. *See id.* at 59; *see also* Commonwealth Exhibit 9 (BAC report).

Based upon the foregoing, the Commonwealth presented sufficient evidence to sustain Rutledge's convictions. *See Smith*, *supra*. Regarding both of his DUI convictions, the Commonwealth proved beyond a reasonable doubt that Rutledge was driving the vehicle and that his BAC was between 0.10% and 0.16%. *See* 75 Pa.C.S.A. § 3802(a)(1), (b). Further, regarding his disregarding traffic lanes conviction, the trial court found credible Officer O'Brien's testimony that there were no adverse road conditions or obstructions. *See* Trial Court Opinion, 4/18/24, at 1-2. Additionally, Rutledge's operation of the vehicle into the embankment on the side of the road and into a ditch cannot be considered safely operating the vehicle out of a single lane of traffic. *See* 75 Pa.C.S.A. § 3309(1). Finally, Rutledge's reliance on defense witness testimony in support of his arguments is misplaced. It is clear that the trial court found the defense witnesses to be incredible and, therefore, this Court may not rely on such evidence. *See Smith*, *supra*. Accordingly, the Commonwealth presented sufficient evidence to sustain Rutledge's convictions and he is entitled to no relief.

In his third claim, Rutledge challenges his convictions of DUI—general impairment, DUI—high rate, and disregarding traffic lanes as against the weight of the evidence. *See* Brief for Appellant, at 78-81. Largely, Rutledge adopts his sufficiency arguments, summarized above, and again argues that the 20-minute observation period was "defective" because of the above-asserted failures to follow procedure, Rutledge's coughing prior to the

administration of the breathalyzer, and Dr. Guzzardi's testimony. *See id.* We disagree.

Our standard of review is well-settled. "Appellate review of a weight claim is a review of the [trial court's] exercise of discretion, **not of the underlying question of whether the verdict is against the weight of the evidence**." *Commonwealth v. Widmer*, 744 A.2d 745, 753 (Pa. 2000) (emphasis added, citation omitted). Where the trial judge has had the opportunity to hear and see the evidence presented, "an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination[.]" *Id.* (citing *Commonwealth v. Farquharson*, 354 A.2d 545 (Pa. 1976)). A challenge to the weight of the evidence is one of the least assailable reasons for granting or denying a new trial. *See Widmer*, *supra*.

Nevertheless, a trial court's exercise of discretion is not unfettered. *See id.* The "propriety of the exercise of discretion in such an instance may be assessed by the appellate process when it is apparent that there was an abuse of that discretion." *Id.* Moreover, the trier of fact, "while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part[,] or none of the evidence." *Commonwealth v. Britton*, 134 A.3d 83, 86 (Pa. Super. 2016).

The trial court concluded that none of the convictions shocked its conscience and addressed Rutledge's weight claims as follows:

[Rutledge] admitted he was the operator of his vehicle when he lost control of the car and crashed. [The court] found Officer O'Brien's testimony to be credible and his testimony was corroborated by the video and audio recordings admitted into evidence. [The court] also found [Rutledge]'s explanation of how and why he lost control of the car to be contrary to the [road] conditions readily seen on the video[.] The road was dry, and the temperature was not below freezing. [Rutledge]'s vehicle also travel[]ed a considerable distance after [he] stated he lost control by going up a steep embankment, traveling back down, crossing a two lane road, and not stopping until it was embedded in a ditch a considerable distance from the roadside. The inference is that the breaks were not engaged in a quick or meaningful way because [Rutledge]'s reactions were impaired. Officer O'Brien testified that he noted the odor of alcohol emanating from [Rutledge] upon first contact and he mentions this to [Rutledge] at the scene as evidence in the video. Additionally, [Rutledge]'s speech was slurred at the time of his arrest.

[The court] find[s] that this evidence is not tenuous, vague, or uncertain, and that [Rutledge]'s DUI—general impairment conviction does not shock the consc[ience] of th[e] court

* * *

[Rutledge] contests the accuracy of the chemical breath test on the grounds that he swallowed mouthwash, belched/regurgitated during his transport to the station, and coughed immediately prior to the test being administered. This opinion was testified to by his toxicology expert. [The court] found [Rutledge]'s challenge to the accuracy of the breath test to be based on Dr. Guzzardi's tenuous and unconvincing expert opinion. Dr. Guzzardi opined that the results were questionable because he did not observe any signs of impairment. We find the facts of [Rutledge]'s poor driving[,] as evidenced by the crash, his physical appearance and slurred speech[,] as evidenced by the video, and Officer O'Brien's observation of the odor of an alcoholic beverage on [Rutledge]'s breath, corroborate the breath test results.

[The court] also found Dr. Guzzardi's opinions were based upon facts not supported by the record. Dr. Guzzardi placed great significance on his observation that [Rutledge] belched/regurgitated while being transported. As stated previously, after viewing the video footage carefully at the times

Dr. Guzzardi indicated he saw belching/regurgitation, we did not find his observations to be accurate. Thus, his conclusion that there were contaminants from [Rutledge]'s stomach in his mouth at the time of the chemical breath test carries no weight. In contrast, we accepted as credible Officer O'Brien's certification to administer the test and the machine's calibration certification. We also considered the differences between [Rutledge]'s demeanor and speech pattern of January 5, 2023 and his live testimony during the bench trial before this jurist. Although there were no dramatic differences between his behaviors, we did note that[,] at trial[, Rutledge] spoke more clearly and gave quicker responses to questions.

* * *

[Regarding Rutledge's conviction for disregarding traffic lanes, b]y his own admission, [he] crossed into the oncoming traffic lane when he lost control of his vehicle. As stated previously, [the court] found that [Rutledge] failed to safely manage the curve because of excessive speed, alcohol impairment, or both, and was unable to control his vehicle in his lane.

Trial Court Opinion, 4/18/24, at 13-16 (citations omitted).

After reviewing the record, we conclude that the trial court did not abuse its discretion in denying Rutledge's weight claim and, accordingly, he is entitled to no relief. *See Widmer*, *supra*.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 1/9/2026

- 17 -